UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CATONYA SCONIERS, as Personal Representative,
of the ESTATE OF PATRICK P. THOMAS,

                                                    Case No.
                                                    Hon.
                                                    Mag.

                        Plaintiffs,

v.

MICHIGAN DEPARTMENT OF CORRECTIONS,
GUS HARRISON CORRECTIONAL FACILITY and
HENRY FENRICK

                        Defendants.
_____/

| | |
|---|---|
| THE MARK SISSON LAW FIRM, PLLC<br>MARK E. SISSON (P75250)<br>MATTHEW F. BOEHRINGER (P79332)<br>Attorneys for Plaintiff<br>30200 Telegraph Rd. Ste. 102<br>Bingham Farms, MI 48025<br>(248) 829-3088/ Fax: (734) 655-9045<br>msisson@marksissonlaw.com<br>mboehringer@marksissonlaw.com<br>lmorey@marksissonlaw.com | |

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge, nor do I know of any other civil action not between these parties, arising out of the same transaction or occurrence as alleged in this Complaint  that is either pending or was previously filed and dismissed, transferred, or otherwise disposed of after having been assigned to a judge in this Court.

## **PLAINTIFF'S COMPLAINT AND JURY DEMAND**

**NOW COMES** Plaintiff CATONYA SCONIERS, as Personal Representative,

of the ESTATE OF PATRICK P. THOMAS, deceased, by and through her attorneys, THE



MARK SISSON LAW FIRM, and for her Complaint hereby states as follows:

## **INTRODUCTION**

1.      This is a civil rights/wrongful death action under 42 U.S.C. § 1983, The Eighth Amendment, & The Fourteenth Amendment resulting from a systemic indifference to incarcerated people with medical health needs at the Michigan Department of Corrections and Gus Harrison Correctional Facility.

2.      As a direct result of Defendants' actions and inactions, its policies, procedures, and customs, the medical needs of Michigan Department of Corrections and Gus Harrison Correctional Facility inmates are routinely ignored.

3.      Patrick Thomas ("Thomas") was incarcerated, under Defendants' care, with obvious and known medical health needs, whose respiratory distress, diminished breath sounds, and low oxygen saturation were ignored on September 17, 2023, which resulted in his tragic, untimely death on September 17, 2023. Thomas was just 36 years old.

## **JURISDICTION AND VENUE**

4.      This civil action is brought pursuant to 42 U.S.C. § 1981, et seq., and seeks monetary damages against Defendants for violations of 42 U.S.C. § 1983 and the Fourteenth Amendment to the Constitution of the United States.

5.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), 1367(a), and 42 U.S.C. § 1983.

6.      The amount in controversy greatly exceeds this Honorable Court's jurisdictional requirements, excluding interest and costs.

7.      This Honorable Court has personal jurisdiction over Defendants, who are located in the Eastern District of Michigan.



8.      Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b) and because all events and controversies occurred in this jurisdiction.

## PARTIES

9.      Plaintiff, CATONYA SCONIERS, is the duly appointed personal representative of the estate of the decedent, Thomas. Plaintiff is a resident of College Park, Georgia.

10.     Defendant, MICHIGAN DEPARTMENT OF CORRECTIONS, is a governmental entity of the State of Michigan duly organized to carry out governmental functions pursuant to the laws of Michigan, one of the functions being to organize, operate, staff, and supervise its correctional facility known as the GUS HARRISON CORRECTIONAL FACILITY.

11.     At all times relevant to this Complaint, Defendant HENRY FENRICK was employed by the Michigan Department of Corrections at the Gus Harrison Correctional Facility. Upon information and belief, Defendant Fenrick is a resident within this district and is sued in her individual capacity.

## FACTUAL ALLEGATIONS

12.     On September 17, 2023, Patrick Thomas was an inmate of Defendants Michigan Department of Corrections and Gus Harrison Correctional Facility.

13.     Thomas was known to the staff of Michigan Department of Corrections and Gus Harrison Correctional Facility to be asthmatic and in need of medications including but not limited to rescue inhalers.



14.     During the morning of September 17, 2023, Thomas suffered an asthma attack and required immediate medical attention.

15.     On September 17, 2023, Thomas was observed on the walkway outside 2 Block on his hands and knees.

16.     Thomas was found responsive and placed in a wheelchair for transport to the clinic.

17.     On the way to the clinic, Thomas became unresponsive.

18.     Upon arrival at the clinic, Thomas was examined and was found to have dilated pupils, low V/S, low blood pressure, ashen fingertips with poor capillary refill, profuse sweating, and a blood oxygen saturation of 18%.

19.     At or around 11:05 AM, Thomas was administered oxygen at 2 liters with a mask and is oxygen saturation returned to 99% with color returning to his fingertips, improve capillary refill, and improved responsiveness.

20.     At or around 11:10 AM, Thomas's pulse dropped, and his oxygen saturation fell to 56%.

21.     Despite having knowledge of Thomas's medical history, and the obvious signs and symptoms of Thomas having an asthma attack, clinic staff failed to provide an inhaler for Thomas and instead administered repeated doses of Narcan, which is only appropriate to reverse the effects of opioid overdoses.

22.     At or around 11:11 AM, clinic staff administered a dose of nasal Narcan and notified custody to contact EMS for an ambulance to the clinic.

23.     At or around 11:16 AM, Thomas's vitals continued to deteriorate, and clinic staff administered a second dose of Narcan to the right deltoid.



4

24.   At or around 11:20 AM, Thomas's pulse was gone and CPR was initiated.

25.   At or around 11:22 AM, and AED and ambubag were deployed.

26.   The AED cycled 3 times during CPR without administering a shock prior to EMS arrival.

27.   At or around 11:25 AM, a third dose of Narcan was administered.

28.   EMT arrived on site and took over care at or around 11:35 AM.

29.   EMT administered 4 doses of epinephrine, a magnesium IV, employed CPR, and inserted an airway.

30.   At or around 12:00 PM, an irregular pulse was achieved, and the decision is made to transport Thomas to the hospital.

31.   EMS arrived with Thomas to ProMedica Charles & Virginia Hickman Hospital at or around 12:19 PM.

32.   Thomas had suffered cardiac arrest during transport to the hospital.

33.   At or around 12:22 PM, no pulse was detected, and CPR was administered.

34.   At or around 12:24 PM, epinephrine was administered, and CPR was resumed.

35.   At or around 12:27 PM, Thomas was without a pulse and epinephrine was administered.

36.   At or around 12:29 PM, Thomas was without a pulse and CPR was resumed.

37.   At or around 12:30 PM, epinephrine was administered.

38.   At or around 12:31 PM, pulseless electrical activity was found and CPR was resumed.



THE
MARK SISSON
LAW FIRM
PLLC

39.     At or around 12:34 PM, epinephrine was given, no pulse was found, and Mr. Thomas was pronounced dead.

40.     Defendants' callous disregard of Thomas's obvious pain and suffering and failure to properly provide medical care including but not limited to administration of Mr. Thomas' rescue inhaler, rose to the level of reckless and intentional harm, which was the cause of Thomas's untimely and painful death.

41.     Defendants did not believe that Thomas was having an asthma attack and Defendants' disregard of Thomas's well-being is made clear in the medical records which state that a search of Thomas's cell found 3 unused rescue inhalers, "with the idea this may have been a distraction for an overdose."

42.     Thomas's death is a direct result of Defendants' explicit gross negligence and deliberate indifference to his health and welfare.

**DEFENDANT HENRY FENRICK**

43.     Plaintiff hereby incorporates by reference the preceding paragraphs as though fully stated herein.

44.     The U.S. Constitution requires prison officials to provide all state and federal prisoners as well as pretrial detainees (people in jail waiting for trial) with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251, 256 (1976) ("These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration.").

45.     Defendant Fenrick, as a jail nurse, had a constitutional duty to protect, monitor, and provide adequate care for Thomas and other inmates at Gus Harrison Correctional Facility.



46.    Upon current information and belief, Defendant Fenrick was employed by Michigan Department of Corrections to provide medical services to inmates at Gus Harrison Correctional Facility, including Thomas.

47.    Upon current information and belief, Defendant Fenrick evaluated, screened, supervised, and/or monitored Thomas during his incarceration at the Gus Harrison Correctional Facility.

48.    In fact, on September 17, 2023, Defendant Fenrick medically screened Thomas and conducted a full medical history and physical assessment on him.

49.    Upon current information and belief, Defendant Fenrick was explicitly aware of Thomas's medical conditions and serious medical needs while an inmate at Gus Harrison Correctional Facility.

50.    Defendant Fenrick was explicitly aware of Thomas's asthma from his previous examinations while incarcerated.

51.    Upon current information and belief, Defendant Fenrick was also working a shift on September 17, 2023, at or around the time that Thomas collapsed and suffered an asthma attack.

52.    Upon current information and belief, Defendant Fenrick was responsible, through her employment with Michigan Department of Corrections at Gus Harrison Correctional Facility, for medically checking on inmates, including Thomas, and providing them with adequate medical care.

53.    Defendant Fenrick knew of Thomas's serious medical needs while an inmate at Gus Harrison Correctional Facility.



54.     Defendant Fenrick knew of Thomas's serious medical needs while an inmate at Gus Harrison Correctional Facility.

55.     On September 17, 2023, Defendant Fenrick knew of or personally observed Thomas in respiratory distress and/or in need of adequate medical attention.

56.     Defendant Fenrick failed to provide adequate medical care to Thomas despite knowledge of his serious medical needs.

57.     As a direct and proximate result of Defendant Fenrick' deliberate indifference to Thomas's constitutional rights and serious medical needs, as set forth herein, Thomas suffered for hours and began to slowly die on September 17, 2023.

58.     As a direct and proximate result of Defendant Fenrick's deliberate indifference to Thomas's constitutional rights and serious medical needs, as set forth herein, Thomas did not receive the adequate monitoring, supervision, and medical care that he desperately and urgently needed on September 17, 2023.

59.     As a direct and proximate result of Defendant Fenrick's deliberate indifference to Thomas's constitutional rights and serious medical needs, as set forth herein, Thomas suffered cardiac arrest on September 17, 2023..

60.     Had Defendant Fenrick properly provided adequate medical care to Thomas, he would still be alive today.

## COUNT I - 42 U.S.C. § 1983 CONSTITUTIONAL DEPRIVATIONS
*(Against Individual Defendants, Michigan Department of Corrections and Gus Harrison Correctional Facility.)*

61.     Plaintiff hereby incorporates by reference the preceding paragraphs as though fully stated herein.



62.     The individually named Defendants are a person within the meaning of the term under 42 U.S.C. § 1983.

63.     Defendants Michigan Department of Corrections and Gus Harrison Correctional Facility acted under the color of state law by fulfilling public functions, including medical screening and care, in concert with state actors, to individuals detained in the Gus Harrison Correctional Facility, a public jail.

64.     Defendant Gus Harrison Correctional Facility is directly and vicariously liable for its employees' actions and/or inactions, including Defendant Henry Fenrick.

65.     Plaintiff decedent, Thomas, was entitled to constitutionally protected rights as a citizen of the United States of America, such as a right to personal safety and right to adequate medical care and protection encompassed in the substantive component of the Due Process Clause of the Fourteenth Amendment and the right to be free of cruel and unusual punishment as encompassed in the Eighth Amendment.

66.     Defendants, as Plaintiff decedent's custodial caretaker, owed Plaintiff decedent an affirmative duty to secure for him the constitutionally protected rights identified above.

67.     Defendants, knowing Plaintiff decedent's medical needs, had a duty under state law to instruct, supervise, train, direct, and conduct themselves and/or their employees to assure the delivery of medical care and supervision to Plaintiff decedent that is consistent with his health and safety, and which avoided the unreasonable risk of severe harm to him.

68.     The acts and omissions attributable to the Defendants under 42 U.S.C. § 1983 were unreasonable and performed knowingly, deliberately, intentionally,



9

maliciously, with gross negligence, callousness, and reckless indifference to Plaintiff decedent's well-being and in complete disregard for Plaintiff's safety, with wanton intent for Plaintiff to suffer the unnecessary and intentional infliction of pain, failure to obtain timely medical treatment, and failure to properly train, supervise, develop and implement policies providing adequate medical care and treatment to a prisoner and by reason of which Plaintiff is entitled to compensatory and punitive damages.

69.     The conduct of the Defendants deprived Plaintiff decedent, Thomas Campbell, of his clearly established rights, privileges, and immunities in violation of The Eighth Amendment and The Fourteenth Amendment of the United States Constitution and of 42 U.S.C. § 1983.

70.     Defendant's conduct exhibited a deliberate indifference by intentional acts and omissions and otherwise grossly negligent behavior so as to breach Plaintiff decedent's right to basic safety and cause constitutional deprivation of his individual constitutional rights.

71.     Defendants not only breached this duty but also acted, under color of law, with gross negligence and deliberate indifference to Plaintiff decedent's safety, protection, and medical needs by:

- Failing to properly render the proper medical attention to a prisoner who was diagnosed and generally recognized as mentally ill;

- Failing to properly train correction officers in the evaluation of whether a prisoner needs medical treatment;

- Failing to provide decedent with appropriate supervision given his medical needs;



- Failing to promptly respond to Plaintiff decedent's recognizable medical emergency in reckless disregard and deliberate indifference to decedent's health and safety;

- Failing to properly supervise Plaintiff decedent throughout the morning of September 17, 2023;

- Failing to act in other ways that exposed Plaintiff decedent to a known, extreme risk to his health and safety that may or will become known during discovery.

72. As a direct and proximate result of the aforementioned conduct and omissions of Defendants, Plaintiff decedent, Patrick Thomas, was deprived of his constitutionally protected rights as described above and suffered severe and permanent injuries, pain and suffering, medical bills and costs, economic damages, and the prisoner's death.

WHEREFORE, Plaintiff requests the following relief:

- Extreme pain and suffering and mental health and emotional damages resulting from Defendants' acts and omissions up to and including his death;

- Loss of comfort, society, and companionship;

- Reasonable medical, funeral, and burial expenses;

- Compensatory and punitive damages;

- All damages allowed under the Wrongful Death Act, including economic damages and loss of society and companionship; and

- Any and all other damages otherwise recoverable under 42 U.S.C. §§ 1983 and 1988, including an award of attorney fees and costs.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant, including punitive damages under 42 U.S.C. § 42, in excess of $75,000.00, together with interest, costs, and attorney's fees.



11

## COUNT II - *MONELL* CLAIM PURSUANT TO 42 U.S.C. § 1983
*In Violation of the Eighth Amendment and Fourteenth Amendment of the United States Constitution*
*(As to Defendants Michigan Department of Corrections and Gus Harrison Correctional Facility.)*

73.     Plaintiff hereby incorporates by reference the preceding paragraphs as though fully stated herein.

74.     Plaintiff decedent, Patrick Thomas, was entitled to constitutionally protected rights as a citizen of the United States of America. This includes the right to personal safety and the right to medical care and protection encompassed in the substantive component of the Due Process Clause of the Fourteenth Amendment.

75.     Pursuant to 42 U.S.C. § 1983, The Eighth Amendment, and The Fourteenth Amendment to the United States Constitution, Defendants Michigan Department of Corrections and Gus Harrison Correctional Facility owed Thomas certain duties to properly supervise, monitor, and train its employees, correctional officers, nurses, and staff so as to monitor and supervise the jail's prisoners so that they would detect serious medical conditions and facilitate prompt and immediate medical attention and/or transport to a hospital emergency department.

76.     By refusing to properly monitor, supervise, and care for Plaintiff decedent while he was in their custody, Defendants, their employees, and agents, each subjected Plaintiff decedent to a depravation of clearly established, constitutionally protected rights and privileges secured by The Fourteenth Amendment to the Constitution of the United States.

77.     Individuals, including Plaintiff decedent, are provided greater constitutional protection under the Eighth Amendment and Fourteenth Amendment, which proscribes



liability when a defendant's conduct "is such a substantial departure from accepted professional judgment, practice or standard as to demonstrate that the person responsible did not base the decision on such judgment." *Johnson v. Williams*, No. 15-13856, 2017 U.S. Dist. LEXIS 156149, at *13-14 (E.D. Mich. Sep. 25, 2017) (quoting *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 848 (6th Cir. 2002)).

78.   The foregoing rights were clearly established at the time of the violations.

79.   That Defendants, in their representative and official capacity, have maintained a custom and policy of improper training and supervision of its jail employees, including jail staff, deputies, sergeants, and nurses. Defendants are not protected by governmental immunity when following a policy that deprives individuals of their constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-92, 98 S. Ct. 2018, 2036 (1978).

80.   The deprivations were, in part, permitted and caused by the customs, policies, and/or established practices of Defendants, acting under color of their statutory and legal authority, as provided to them by the State of Michigan and other governmental agencies.

81.   Defendant owed Thomas the following duties and obligations:

- To use due care and caution;

- To adequately and properly create and promulgate guidelines and policies that comply with the requirements of 42 U.S.C. § 1983 regarding the incarceration of prisoners and the supervision of prisoners, especially those who are mentally, emotionally and/or physically unstable and especially those who are diagnosed as having psychiatric or psychological problems and other serious medical conditions, including respiratory distress;



- To adequately and properly create and promulgate guidelines and policies that comply with the requirements of 42 U.S.C. § 1983 regarding the incarceration of prisoners who have serious medical needs to ensure that staff can immediately and appropriately respond and act when a prisoner is in distress and has medical needs;

- To adequately and properly train and supervise correction officers, nurses, and employees of the Gus Harrison Correctional Facility, under Defendant's supervision, on the proper method of supervising prisoners and providing for their medical needs and on effectively controlling prisoners who have or are suspected of having psychological problems, psychiatric problems, and serious medical problems; *and*

- To avoid hiring or selecting individuals who Defendant knows or should know are incapable of performing their responsibilities or who are likely to misuse or abuse the power conferred on them as employees of the Gus Harrison Correctional Facility.

82.    Defendant breached these duties via its policies, procedures, regulations, customs, and/or lack of training and thus exhibited a reckless indifference toward its prisoners, and Patrick Thomas specifically, in the following ways, including but not limited to:

- Defendant's failure to staff the jail with competent medical personnel;

- Defendant's failure to monitor their correctional officers and medical personnel to ensure that they adequately monitor and supervise prisoners who have serious medical needs;

- Defendant's failure to have proper policies and procedures, and training to deal with prisoners with serious medical conditions and/or needs and to ensure that the policies and/or procedures are followed, which include serial examinations by competent and licensed medical and mental health personnel like RNs, Psychologists and/or Doctors as well as its failure to ensure the correctional officers conduct timely and adequate rounds and record their observations of the prisoners as required by their own policies and/or procedures;



14

- Defendant's failure to require that an RN, Doctor, or Mental Health Professional perform a full, complete, and proper examination of a prisoner with serious medical needs and who is secluded in an isolated cell, on a timely basis;

- Defendant's failure to have proper policies and procedures, and training to deal with prisoners who have serious medical needs to ensure that Gus Harrison Correctional Facility staff personnel can immediately and appropriately respond and act when a prisoner is in distress and has cardiac arrest;

- Defendant's failure to fully investigate and discipline its correctional officers and/or medical/mental health personnel who do not abide by policies and procedures relative to providing medical care for serious conditions; *and*

- All other breaches learned through the course of discovery.

83.    Defendant trained its Gus Harrison Correctional Facility officials and/or employees and agents in such a reckless and grossly negligent matter that it was inevitable that the officials and/or nurses would improperly monitor, supervise, and/or otherwise fail to provide proper medical care to an inmate with serious medical needs. Notwithstanding Thomas's repeated requests for help and proper medical attention, Defendant repeated and acquiesced in the continued practice of not placing prisoners with serious medical needs, such as Thomas, under close supervision and acquiesced in the repeated and continued practice of not adequately treating prisoners in obvious need of treatment.

84.    The failure of the Defendant to provide training and supervision regarding adequate medical care amounts to deliberate indifference to the safety and lives of the prisoners of the Gus Harrison Correctional Facility and particularly Patrick Thomas.

85.    Plaintiff decedent, Patrick Thomas, needed his rescue inhaler to correct an asthma attack which Defendant failed to provide.



86.     Defendants knew or, in the exercise of reasonable care, should have known that individual jail officials had engaged in misconduct and other violations of the constitutional rights of prison prisoners at the Gus Harrison Correctional Facility, more specifically of Thomas.

87.     Defendant failed to properly investigate the improper practices and to supervise and train the jail officials, staff, employees, and/or nurses at the Gus Harrison Correctional Facility.

88.     The aforesaid improper training, monitoring, instruction, direction, discipline, and supervision proximately caused the deprivation of Plaintiff's constitutional rights.

89.     As a direct and proximate result of the above-cited violations of Plaintiff's constitutional rights by Defendants, Thomas died, and thus his estate, through Catonya Sconiers, has and will continue to suffer damages in the future, including, but not limited to:

- Reasonable funeral and burial expenses;

- Reasonable compensation for the pain and suffering undergone by Thomas while he was conscious during the time between his first respiratory distress symptoms and his death;

- Loss of comfort, society, and companionship;

- Compensatory and punitive damages; and

- Any and all other damages otherwise recoverable under 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendant, including punitive damages under 42 U.S.C.



§ 42, in excess of $75,000.00, together with interest, costs, and attorney's fees.

## COUNT III – NEGLIGENCE & GROSS NEGLIGENCE CLAIM
*(As to Defendants, Henry Fenrick, & Gus Harrison Correctional Facility)*

90.     Plaintiff hereby incorporates by reference the preceding paragraphs as though fully stated herein.

91.     Defendant Michigan Department of Corrections acted under the color of state law by fulfilling public functions, including medical screening, administration, and care, in concert with state actors, to individuals detained in the Gus Harrison Correctional Facility, a public jail.

92.     The Defendant voluntarily assumed the duty of care for Plaintiff decedent, Patrick Thomas, which included, but was not limited to, the following:

  a. Exercise of reasonable and ordinary care for his safety and well-being;

  b. Providing trained and qualified employees, staff and/or agents to deliver safe and reasonable care for his safety and basic needs;

  c. Hiring, training, retaining, and supervising employees, staff and/or agents to provide direct and indirect supervision of Patrick Thomas while he was in custody at Defendants' facility, so as to protect him from harm;

  d. Assure that employees, staff and/or agents treated Patrick Thomas at all times with respect and dignity;

  e. Conduct full and complete investigations whenever complaints of abuse, neglect, or medical need were brought to Defendants' attention, and to act immediately to provide medical care when discovered; *and*

  f. Provide the standard and quality of care and services that Defendant promised they would provide as set forth in their agreements between the Michigan Department of Corrections, Gus Harrison Correctional Facility, and/or the State of Michigan.

93.     Defendant breached such duties.



17

94.   Defendant breached such duties by maintaining, creating, or otherwise condoning a custom, practice, and/or policy of ignoring serious medical risks of inmates, including Thomas Campbell, and being deliberately indifferent to them.

95.   Upon information and belief, Defendant had knowledge that Defendant Henry Fenrick presented a risk to Plaintiffs' safety and wellbeing.

96.   At all times relevant hereto, Defendant Henry Fenrick were acting in the course and scope of their employment/agency for Defendant Gus Harrison Correctional Facility and breached the applicable standard of medical care which was a proximate cause of physical injury, pain and suffering, death, and other damages to Plaintiff.

97.   It is undoubtedly ordinary negligence to fail to provide a rescue inhaler for an asthmatic inmate, as Defendants did on September 17, 2023.

98.   Defendant Gus Harrison Correctional Facility is directly and vicariously liable for its employees' actions and/or inactions, including Defendant Henry Fenrick.

99.   The use of unconstitutional indifference to the medical needs of inmates is not a novel occurrence. Rather, it is an accepted and approved custom, policy and/or practice by Defendant.

100.   Defendants' actions were negligent and undertaken in a reckless disregard for whether injury would result.

101.   Defendant Michigan Department of Corrections had actual, constructive and/or ostensible knowledge of their employees' and/or staffs' and/or agents' regular practice, custom, and/or policy of being negligent, grossly negligent, and/or deliberately indifferent to the safety, care, and medical needs of its detainees at Gus Harrison Correctional Facility.



102.  Defendants were negligent, grossly negligent and acted willfully, wantonly and recklessly by failing to follow the Michigan Public Health Code, and other applicable Heath Rules, including but not limited to:

a.  Failing to protect Plaintiff decedent from abuse and/or neglect.  MCL 330.1722;

b.  Failure to provide Plaintiff decedent with suitable services.  MCL 330.1708(1)

c.  Failure to provide a safe, sanitary, and humane treating environment to Plaintiff decedent.  MCL 330.1708(2);

d.  Failing to treat Plaintiff decedent with dignity and respect.  MCL 330.1708(4);

e.  Failing to follow the Michigan Department of Community Health Administrative Rules, including failing to report abuse and take other corrective action.  R 330.700, R 330.7045 et seq.;

f.  These actions are a proximate cause of Plaintiff's injuries.

103.  Defendants, including Defendant Gus Harrison Correctional Facility, had a special relationship with the Plaintiff decedent, specifically a doctor-patient relationship wherein Defendants derived a profit from the care of the Plaintiff decedent who was entrusted to their care, and thus had a legal duty to protect him and/or ensure that he was not subject to actions described within this complaint.

104.  Defendant Henry Fenrick were acting within the course and scope of aforesaid agency, employment, and joint venture with the advance knowledge, acquiescence, subsequent ratification, and approval of the acts and omission of each of the other Defendants.

105.  Defendant Henry Fenrick were deliberately indifferent to Plaintiff decedent and his serious medical needs while they were acting as nurses for Defendant Gus



Harrison Correctional Facility, under the guise of medical treatment, and in furtherance of Defendant Gus Harrison Correctional Facility's interests.

106.   The ordinary and gross negligence of Defendants has caused Plaintiff various egregious damages, including but not limited to:

    a.  Physical pain and suffering;

    b.  Death and loss of enjoyment of life;

    c.  Anxiety, fear, and humiliation;

    d.  Emotional distress;

    e.  Economic damages; *and*

    f.  Other damages that may be discovered through the course of this litigation.

107.   As a direct and proximate result of the aforesaid negligence of Defendants, Plaintiff was tragically killed and suffered damages as set forth in this complaint.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants for whatever sum she is found to be entitled to, together with costs, interest, attorney fees, and punitive and/or exemplary damages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, CATONYA SCONIERS, as personal representative of the ESTATE OF PATRICK P. THOMAS, deceased, respectfully requests this Honorable Court to enter judgment in her favor and against Defendants, for whatever sum she is found to be entitled together with costs, interest, and attorney fees.



Respectfully submitted,
THE MARK SISSON LAW FIRM, PLLC

*/s/   Mark E. Sisson*
MARK E. SISSON (P75250)
MATTHEW F. BOEHRINGER (P79332)
THE MARK SISSON LAW FIRM
Attorneys for Plaintiff
30200 Telegraph Rd. Suite 102
Bingham Farms, MI 48025
248-443-3022/ fax: 734-655-9045
msisson@marksissonlaw.com
mboehringer@marksissonlaw.com
Legal Assistant: lmorey@marksissonlaw.com

**Proof of Service**

The undersigned certifies that the foregoing instrument was served upon the attorneys of record of all parties to the above cause by mailing same to them at their respective addresses (and/or facsimile numbers) as disclosed by the pleadings of record herein, on September 13, 2024. I declare under the penalty of perjury that the statement above is true to the best of my information, knowledge and belief.

☐ U. S. Mail                          ☐ Facsimile
☐ Hand Delivered                      ☐ UPS
☐ Airborne Next Day Delivery      X  E-filing


Signature       _____*Lindsey Morey*_____
                    Lindsey Morey

